```
UNITED STATES DISTRICT COURT                    ECF
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
WINDELL HARRIS,                      : 12 Civ. 3578 (PAC) (JCF)
                                     :
               Plaintiff,            :     REPORT AND
                                     :   RECOMMENDATION
                                     :
     - against -                     :
                                     :
C. GUNSETT, Correctional Officer,    :
S. RESTEY, Correctional Officer,     :
SURPRENT, Correctional Sergeant,     :
M. ROYCE, Correctional Captain, and  :
R. SNEDEKER, Correctional Officer,   :
                                     :
               Defendants.           :
- - - - - - - - - - - - - - - - - - -:
```
TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:

Windell Harris brings this action pro se under 42 U.S.C. § 1983 against Correctional Officers Clifford Gunset, Spencer Restey, and Robert Snedeker, Correctional Sergeant Michael Suprenant, and Correctional Captain Mark Royce. He alleges that while he was incarcerated at Green Haven Correctional Facility ("Green Haven"), the defendants violated his civil rights by subjecting him to excessive force and conspiring to cover up the assault. The defendants have moved to dismiss the plaintiff's claims against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] For the reasons that follow, I recommend that the motion be granted.

---

[1] This motion was initially filed on behalf of all defendants except for Correctional Officer Gunsett. After Officer Gunsett was served with a copy of the summons and the complaint, I granted his request to join the motion. (Memorandum Endorsement dated Feb. 11, 2013).

1

Background

In accordance with the standard for assessing a motion to dismiss, the allegations in Mr. Harris' complaint are taken as true, and all reasonable inferences are drawn in his favor. See LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009). In addition, any documents incorporated into the complaint by reference will also be considered. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). In this case, the inmate grievance appended to the declaration of Inna Reznik is incorporated into the complaint because the plaintiff asserts that he has attached it to the complaint.

On April 3, 2012, upon returning from recreation, Mr. Harris entered the E and F Corridor of Green Haven when Officer Restey told him to "get on the wall." (Complaint ("Compl."), ¶ II.D). When the plaintiff inquired, "What[']s going on," Officer Gunsett approached him from behind, pushed him "extremely hard" against the wall, and stated, "Don't ask questions nigger." (Compl., ¶ II.D). Officer Restey then punched the plaintiff with a closed fist on the left side of his lower jaw. (Compl., ¶ II.D). At the same time, Officer Gunsett put his hands on both sides of the plaintiff's head and "push[ed]/bang[ed]" the plaintiff's head against the brick wall while screaming racial slurs. (Compl., ¶ II.D). Officer Snedeker and Officer Restey then started hitting Mr. Harris on his lower back and legs with their "batons, nightsticks, billy clubs." (Compl., ¶ II.D). This continued for approximately five to eight minutes. (Compl., ¶ II.D).

After the first assault stopped, Officer Restey stated, "Now take it to your block retard." (Compl., ¶ II.D). Officer Gunsett then said to Officer Restey, "[A]re you crazy[,] we will lose our job." (Compl., ¶ II.D). Office Snedeker responded, "Let[']s find a we[a]pon on him . . . . Hold on[,] I'll be right back." (Compl., ¶ II.D). Officer Snedeker then left the area and thereafter returned with a weapon. (Compl., ¶ II.D). He said to Mr. Harris, "This is yours." (Compl., ¶ II.D). The officers then started to "use excessive force" on him again. (Compl., ¶ II.D). As a result of this incident, the plaintiff suffered from a bruise to his forehead, swelling of the jaw and head, pain in his lower back and leg, excessive headaches, and migraines, as well as emotional and mental pain and suffering. (Compl., ¶ III). Following the altercation, he was examined by a nurse. (Compl., ¶ II.D).

On April 9, 2012, Sergeant Suprenant told Mr. Harris that "the pictures & nurse report" were lost. (Letter of Windell Harris ("Harris Letter"), attached to Compl., at 13).[2] Sergeant Suprenant tried to convince the plaintiff to let him take "new pictures [of him] now that [he was] heal[ed]." (Harris Letter at 13). Sergeant Suprenant and Captain Royce also told the plaintiff that they could "make all [his] problems go away and send [him] back to" general population. (Compl., ¶ IV.F.1).

On April 12, 2012, the plaintiff filed an inmate grievance

---

[2] As the exhibits to the plaintiff's complaint are not numbered, I refer to the page numbers on the complaint filed in the Case Management/Electronic Case Filing (CM/ECF) system.

3

regarding the April 3, 2012, incident.  (Inmate Grievance Complaint dated April 12, 2012, attached as part of Exh. A to Declaration of Inna Reznik dated Jan. 15, 2013).  The plaintiff also filed an inmate grievance on April 18, 2012, regarding both the alleged assault on April 3, 2012, and the alleged conspiracy to cover up the assault.[3]  (Letter of M. Suprenant, Sgt., dated April 22, 2102, attached as part of Exh. A to Reznik Decl.).

On April 29, 2012, Mr. Harris initiated the instant action.[4] He seeks monetary and injunctive relief.  (Compl., ¶ V).

Discussion

    A.    Legal Standard

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.  Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  A complaint need not contain detailed factual allegations, but it must contain more than mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S.

---

[3] Mr. Harris has attached to the complaint an undated letter to the "Inspector General/NYS Attorney General/State Commission of Correction/NYS DOCCS Commissioner/GHCF IGRC Supervisor" which grieves both the alleged assault on April 3, 2012, and the alleged conspiracy to cover up the assault. (Harris Letter).  It is not clear whether this letter was the grievance submitted on April 18, 2012, that was referenced in Sergeant Suprenant's letter.

[4] Under the "prison mailbox rule," a pleading is considered "filed" by a prisoner on the date it is given to a prison official for mailing.  Houston v. Lack, 487 U.S. 266, 276 (1988).

544, 555 (2007)). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the requirements of Rule 8 of the Federal Rules of Civil Procedure. Id. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)). In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)). Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed. See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. See Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997); accord Honig v. Bloomberg, No. 08 Civ. 541, 2008 WL 8181103, at *4 (S.D.N.Y. Dec. 8, 2008), aff'd, 334 F. App'x 452 (2d Cir. 2009).

    B.   Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3

(1979).  Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

    C.   Exhaustion

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust all available administrative remedies prior to filing suit in federal court.  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); accord Hernandez v. Coffey, 582 F. 3d 303, 304 (2d Cir. 2009).  If all administrative remedies are not exhausted, the claims may not be pursued in federal court. Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011).  "'Moreover, a claim must be completely exhausted prior to commencing suit.  It is insufficient to take only limited steps towards exhaustion before commencing the suit, or even to exhaust a claim entirely during the pendency of the case.'" Pugh v. Goord, 571 F. Supp. 2d 477, 490

(S.D.N.Y. 2008) (quoting Schwartz v. Dennison, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007)).

Sufficient exhaustion requires full compliance with the procedural rules of the local administrative agency.  See Espinal v. Goord*,* 558 F.3d 119, 124 (2d Cir. 2009) ("'[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.'" (quoting Jones v. Bock*,* 549 U.S. 199, 218 (2007))).  Compliance necessitates "using all steps that the agency holds out, and doing so properly."  Amador*,* 655 F.3d at 96 (internal quotation marks omitted).

The New York Department of Correctional Services ("DOCS") has a three-tiered administrative review and appeals system for prisoner grievances, the Inmate Grievance Procedure (the "IGP"). N.Y. Comp. Codes R. & Regs. ("NYCRR"), tit. 7, § 701.5; see Mateo v. O'Connor, No. 10 Civ. 8426, 2012 WL 1075830, at *5 (S.D.N.Y. March 29, 2012) (outlining administrative review and appeals system at Green Haven).  Under the IGP, an aggrieved inmate must: (1) file a complaint or a written grievance with the facility's Inmate Grievance Resolution Committee ("IGRC") for informal resolution; (2) appeal IGRC's decision to the facility superintendent; and (3) appeal the superintendent's decision to the Central Office Review Committee ("CORC").  7 NYCRR §§ 701.5 (a)-(d); see Mateo, 2012 WL 1075830, at *5.

An inmate grievance alleging harassment by DOCS employee is subject to expedited review.  7 NYCRR § 701.8; Mateo, 2012 WL 1075830, at *5.  Harassment is defined as "employee misconduct

7

meant to annoy, intimidate[,] or harm an inmate." 7 NYCRR § 701.2(e). All harassment grievances are immediately referred to the superintendent of the facility. 7 NYCRR § 701.8(b). If the superintendent (or his/her designee) determines that the inmate grievance raises a bona fide case of harassment, then the superintendent shall initiate (i) an in-house investigation, (ii) an investigation by the Inspector General's Office ("IGO"), or (iii) an investigation by the New York State Police. 7 NYCRR § 701.8(d). Within twenty-five calendar days of receiving the grievance, the superintendent must render a decision unless the inmate consents to an extension of the time limit. 7 NYCRR § 701.8(f). If the inmate disagrees with the superintendent's determination, he has seven days to appeal it to CORC. 7 NYCRR § 701.8(h). If the superintendent does not render a decision within twenty-five days, the inmate may appeal his grievance to CORC by filing a notice of decision to appeal with the inmate grievance clerk at his facility. 7 NYCRR § 701.8(g); see also Mateo, 2012 WL 1075830, at *5 (discussing Green Haven's expedited review process).

Failure to exhaust is an affirmative defense under the PLRA and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216. "[D]efendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with particularity." McCoy v. Goord, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003); see also Nicholson v. Murphy, No. 02 CV 1815, 2003 WL 22909876, at *6 (D. Conn. Sept. 19, 2003) ("[T]he defendants must present proof of non-exhaustion."). Thus,

dismissal pursuant to Rule 12(b)(6) for failure to exhaust is appropriate only "[i]f nonexhaustion is clear from the face of the complaint (and incorporated documents)." McCoy, 255 F. Supp. 2d at 251; accord Laporte v. Fisher, No. 11 Civ. 9458, 2012 WL 5278543, at *5 (S.D.N.Y. Oct. 24, 2012).

Here, the plaintiff's failure to exhaust is evident. At the time Mr. Harris initiated the instant action, he had filed an inmate grievance complaint; however, had not appealed the grievance because a decision was "still pending." (Compl., ¶ IV.E). Given DOCS' prisoner grievance procedures, it would have been impossible for Mr. Harris to complete exhaustion between the time he filed his inmate grievance on April 12, 2012 or April 18, 2012 and filed his federal action on April 29, 2012. See, e.g., Price v. City of New York, No. 11 Civ. 6170, 2012 WL 3798227, at *3 (S.D.N.Y. Aug. 30, 2012) (noting that "given the timelines for grievance procedure outlined in the DOC's regulation, it would have been impossible for [the plaintiff] to [exhaust his administrative remedies] in the 21 days between the alleged incident and the filing of his complaint"); Mateo v. O'Connor, No. 08 Civ. 11053, 2010 WL 3199690, at *3 (S.D.N.Y. Aug. 12, 2010) (dismissing complaint because it was filed within mere days of alleged incidents of harassment and retaliation, making exhaustion "impossible in so short a time frame").

"'To fully exhaust administrative remedies, the plaintiff must go beyond the first step, seeking further stages of administrative review until the plaintiff has availed himself of the final stages

9

of the administrative process.'" Leal v. Johnson, 315 F. Supp. 2d 345, 347 (W.D.N.Y. 2004) (second set of quotation marks omitted) (quoting Booth v. Churner, 532 U.S. 731, 735 (2001)). This must be done before commencing a federal suit. See Skates v. Vanbockstaele, No. 11 Civ. 4414, 2013 WL 658253, at *3 (S.D.N.Y. Feb. 25, 2013) ("[C]ourts have interpreted [42 U.S.C. § 1997e(a)] as requiring the complete exhaustion of institutional administrative remedies prior to commencing a federal suit."); Pugh, 571 F. Supp. 2d at 490. "Such a requirement is particularly appropriate for expedited harassment grievances, which, unlike regular grievances have only one level of administrative review at which to address violative practices and take ameliorative steps to mitigate damages." Mateo, 2012 WL 1075830, at *5 (citing Cruz v. Jordan, 80 F. Supp. 2d 109, 119-20 (S.D.N.Y. 1999)).

"'Subsequent exhaustion after suit is filed therefore is insufficient.'" Price, 2012 WL 3798227, at *3 (quoting Neal v. Goord, 267 F.3d at 116, 122 (2d Cir. 2001), overruled on other grounds by Porter, 534 U.S. 516). Thus, "[w]hen a prisoner does not properly exhaust his administrative remedies before filing suit, the action must be dismissed." Mateo v. Alexander, No. 08 Civ. 8797, 2010 WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010). This is the case, even "if a claim has since been exhausted, [and where] it might seem more efficient simply to proceed with the lawsuit rather than dismiss it only to see it immediately re-filed." Id.

Failure to comply with the exhaustion requirement is only excused where:

> (1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such as way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

### 1. Availability of Administrative Remedies

Determining whether administrative remedies were in fact available "includes inquiry into both whether 'the prison provided grievance procedures that inmates . . . could utilize' and whether threats rendered 'all administrative remedies unavailable' or 'some procedures that would ordinarily be available . . . effectively unavailable.'" Snyder v. Whittier, 428 F. App'x 89, 91 (2d Cir. 2011) (alteration in original) (quoting Hemphill, 380 F.3d at 686). This is an objective inquiry: "'that is, would a similarly situated individual of ordinary firmness have deemed them available.'" Macias v. Zenk, 495 F.3d 37, 45 (2d Cir. 2007) (quoting Hemphill, 380 F.3d at 688).

DOCS had in place a well-established administrative grievance process which made administrative remedies available to Mr. Harris at the outset. In fact, Mr. Harris utilized this process by filing inmate grievances on April 12, 2012 and April 18, 2012. See, e.g., Mateo, 2010 WL 3199690, at *4 (noting administrative remedies could not have been unavailable if plaintiff resorted to them). Rather than claiming administrative remedies were completely unavailable to him, the plaintiff appears to argue that he was denied "the

opportunity to further 'exhaust' remedies" because of DOCS' policy of not informing inmates of the results of any investigation conducted by the IGO and because he was "advised" that his complaint was "still pending" on the administrative level. (Responsive Pleading ("Pl. Memo."), ¶ 1). However, when he filed his federal action, the twenty-five day time limit for the superintendent to render a decision had yet to lapse. See 7 NYCRR § 701.8(f). Thus, the plaintiff cannot argue that he was denied an opportunity to exhaust his administrative remedies. See Torres v. Carry, 691 F. Supp. 2d 366, 371 (S.D.N.Y. 2009) ("[U]ntimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." (quoting Ruggiero, 467 F.3d at 176)); Bennet v. James, 737 F. Supp. 2d 219, 224 (S.D.N.Y. 2010) ("[E]xhaustion must be '[p]roper' -- that is, 'compl[y] with agency's deadline and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.'" (alterations in original) (quoting Woodford, 548 U.S. at 90-91)).

    2.   Estoppel

A prisoner may invoke the doctrine of estoppel if the defendant waived the defense of exhaustion of administrative remedies, Hemphill, 380 F.3d at 686, or took some affirmative action to prevent the plaintiff's compliance with administrative procedures, Ruggiero, 467 F.3d at 178. "Some such affirmative actions include beating, denying grievance forms and writing

12

implements, and threatening retaliation." Verrilli v. Winchell, No. 1:09-CV-837, 2010 WL 3909065, at *3 (N.D.N.Y. Sept. 29, 2010).

To the extent that the plaintiff claims that the defendants are estopped from raising the nonexhaustion defense because the superintendent had yet to render a decision for him to appeal to CORC, his argument is without merit.  As discussed, the time for the superintendent to render a decision had yet to expire when Mr. Harris initiated this action.  Accordingly, the defendants are not estopped from raising a nonexhaustion defense.

### 3. Special Circumstances

A special circumstance is "determined by looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." Giano v. Goord, 380 F.3d 670, 678 (2d Cir. 2004).  "Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion." Winston v. Woodward, No. 05 Civ. 3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008).  Indeed, "[a]bsent an allegation by the inmate that his failure to exhaust was based on a reasonable, but erroneous interpretation of prison regulations, the special exception is generally inapplicable." McDowall v. Metropolitan Correction Center, No. 08 Civ. 8329, 2010 WL 649744, at *7 n.4 (S.D.N.Y. Feb. 22, 2010) (collecting cases). Even if Mr. Harris erroneously believed that the superintendent was required to render a decision before April 29, 2012, this belief is not a reasonable interpretation of the regulation.  The DOCS

13

regulation clearly states that "[w]ithin 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance."  7 NYCRR § 701.8(f).

In sum, Mr. Harris has failed to exhaust available administrative remedies.  Furthermore, he has not alleged any conduct on the part of the defendants or any special circumstances that would excuse this failure.  Accordingly, his Section 1983 claim should be dismissed.  Since it appears that Mr. Harris has since exhausted his administrative remedies or that he is still able to exhaust them, dismissal should be without prejudice.  See Berry v. Kerik, 366 F.3d 85, 87 (2d Cir. 2004) (dismissal without prejudice appropriate "'[i]f the time permitted for pursuing administrative remedies has not expired [and] a prisoner who brings suit without having exhausted these remedies can cure the defect simply by exhausting them and then reinstituting his suit.'"); Mendez v. Artuz, No. 01 Civ. 4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (when administrative remedies have been exhausted while complaint is pending, Second Circuit has ruled that proper course is "dismissal of complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how administrative remedies have been exhausted" (citing Neal, 267 F.3d at 123).[5]  If the plaintiff wishes to re-file his complaint, he

---

[5] The defendants argue that Mr. Harris was required to appeal the superintendent's decision dated May 11, 2012. (Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint ("Def. Memo.") at 4).  However, the May 11, 2012 "decision" only informed the plaintiff that his grievance was "under investigation by the Inspector General's Office" and that "any action will be based on the findings of that investigation."

---

(Inmate Grievance Program dated May 11, 2012, attached as part of Exh. A to Reznik Decl.).  When "the Superintendent has directed the complaint be investigated by the Inspector General's Office. . . the inmate has obtained at least partial favorable relief, and as the Second Circuit has held, where the inmate receives favorable relief there is no basis for administrative appeal."  Hairston v. LaMarche, No. 05 Civ. 6642, 2006 WL 2309592, at *9 (S.D.N.Y. Aug. 10, 2006) (citing Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir. 2004)); accord Andrews v. Cruz, No. 04 Civ. 566, 2010 WL 1141182, at *5 (S.D.N.Y. March 24, 2010) (since superintendent referred plaintiff's complaint to IGO for investigation, plaintiff had no reason to appeal favorable resolution of grievance to CORC); see Lawyer v. Gatto, No. 03 Civ. 7577, 2007 WL 549440, at *8 (S.D.N.Y. Feb. 21, 2007) (plaintiff did not need to appeal superintendent's failure to respond within required time frame because he was told that IGO was conducting investigation, and investigation was only relief available from superintendent); cf. Pagan v. Brown, No. 9:08-CV-0724, 2009 WL 2581572, at *8 (N.D.N.Y. Aug. 12, 2009) ("An adverse decision by the Superintendent would be a decision to deny the grievance, or a decision finding that the grievance did not constitute harassment." (emphasis omitted)).

The defendants also contend that Mr. Harris failed to exhaust his administrative remedies because he did not appeal to CORC the conclusion of the IGO's investigation that the plaintiff's complaint was "unsubstantiated."  (Def. Memo. at 5).  The cases the defendants cite to support their argument involve instances where inmates bypassed the formal IGP by directly contacting the superintendent or the IGO.  See, e.g., Goodson v. Silver, No. 9:09-CV-494, 2012 WL 4449937, at *9 & n.17 (N.D.N.Y. Sept. 25, 2012) ("District courts appear to uniformly agree, that without a referral from a superintendent, an IG's investigation of a matter and conclusion that it is unsubstantiated does not satisfy the exhaustion requirement; rather, the inmate must still appeal the IG's conclusion of unsubstantiation to CORC.") (collecting cases); Velez v. Kulhmann, No. 02 Civ. 6062, 2003 WL 22004899, at *3 (S.D.N.Y. Aug. 22, 2003) (plaintiff bypassed formal IGP by sending letter directly to superintendent and complaining to IGO); McNair v. Sergeant Jones, No. 01 Civ. 3253, 2002 WL 31082948, at * 7-8 (S.D.N.Y. Sept. 18, 2002) (making verbal complaint and writing to superintendent and IGO insufficient for exhaustion because fails to comply with IGP); Grey v. Sparhawk, No. 99 Civ. 9871, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (plaintiff complaining directly to IGO and bypassing formal IGP insufficient for exhaustion purposes).

When an inmate utilizes the formal IGP, as Mr. Harris has done, and his grievance is forwarded to the superintendent for expedited review, and the superintendent forwards the grievance to the IGO for investigation, the inmate has obtained "the only relief

15

should provide an explanation of how administrative remedies have been exhausted.

Conclusion

For the foregoing reasons, I recommend that the defendants' motion (Docket no. 14) be granted and the complaint be dismissed without prejudice to being refiled once the plaintiff can establish that he exhausted his administrative remedies or that exhaustion must be excused. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties

---

available from the superintendent under the IGP." Lawyer, 2007 WL 549440, at *8. DOCS' expedited grievance procedure "contain[s] no language advising Plaintiff that he must await the result of [the IGO's] report for his administrative remedies to be considered exhausted. Nor [does] this section state that in the event of an adverse report from the Inspector General an appeal to CORC was available." Id.; see also Andrews v. Cruz, No. 04 Civ. 566, 2010 WL 1142010, at *5 (S.D.N.Y. March 9, 2010), report and recommendation adopted by 2010 WL 1141182 (plaintiff has no reason to appeal any decision to CORC when his grievance was referred to IGO); Pagan, 2009 WL 2581572, at *7 (noting that although "the result of the [investigation by the] Inspector General was not favorable to plaintiff, [] once the Inspector General's office decided that plaintiff's claims were unsubstantiated, plaintiff would have had no recourse to appeal this determination." (emphasis omitted)). In any event, "[i]f it unclear to the court that plaintiff had any recourse after the Inspector General's decision, this court cannot impose such knowledge upon a pro se plaintiff." Id. at 8 n.8.

As noted in Hairston, "[i]f, following the procedures of [harassment grievance], the Superintendent (regardless of the [twenty-five] day rule) is to render a decision after the Inspector General concludes its investigation, and that triggers the inmate's obligation to appeal," 2006 WL 2309592, at *10, it does not appear that the superintendent rendered a decision after the IGO's Report or that Mr. Harris ever received the IGO's Report. Accordingly, the time for Mr. Harris to file an appeal to CORC has not begun to run. Id. (since plaintiff had not received IGO's Report until it was produced in course of litigation and superintendent had not rendered decision after conclusion of IGO's investigation, plaintiff could still file appeal to CORC since time to appeal had not begun to run).

16

shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Paul A. Crotty, Room 735, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

                      Respectfully submitted,

                      */s/ James C. Francis IV*
                      JAMES C. FRANCIS IV
                      UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
           March 18, 2013

Copies mailed this date:

Windell Harris
DIN# 07-A-0879
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

Inna Reznik, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271-0332